# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3058-18T4

STATE OF NEW JERSEY,

      Plaintiff-Appellant,

v.

LEVAR MARTINBOROUGH,

      Defendant-Respondent.

_____

Submitted August 27, 2019 – Decided September 4, 2019

Before Judges Gilson and Mawla.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Union County, Indictment No. 18-02-0073.

Jennifer Davenport, Acting Union County Prosecutor, attorney for appellant (Michele C. Buckley, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

Respondent has not filed a brief.

PER CURIAM

The State was granted leave to appeal from a February 7, 2019 decision, which required it to turn over communications from a victim advocate, records and communications of the Union County Prosecutor's Office investigation, and the decision to deny defendant Levar Martinborough admission to pre-trial intervention (PTI). We reverse the order requiring the State to furnish defendant discovery on these items.

We take the facts from the record. Defendant was indicted by a Union County grand jury for third-degree aggravated assault, N.J.S.A. 2C:12-1(b), in relation to an early-morning incident outside an Elizabeth lounge in May 2017. Defendant observed the victim speaking with defendant's girlfriend. Defendant allegedly approached and struck the victim multiple times, causing multiple lacerations to his face, elbow, and left eye. The assault caused the victim to suffer a nasal fracture and an orbital fracture of the left eye, which required surgery and a bone graft.

The victim gave a statement to police describing the incident. He stated he overheard defendant arguing with his girlfriend during the assault. Specifically, he heard the girlfriend ask defendant "how he could do that," meaning attack the victim, and heard defendant respond "cause he's with you, you're my girl." Following the statement, the assistant prosecutor assigned to

2

the matter declined to charge defendant. However, the prosecutor's office continued the investigation due to the seriousness of the victim's injuries and defendant's indictment followed.

Defendant applied for PTI and the criminal division manager approved the application. The State then informed defendant it had overridden the initial determination and denied him entry to PTI. The reasons for the denial were set forth in a fourteen-paragraph, three-page email, which addressed the guidelines for admission pursuant to Rule 3:28 and the N.J.S.A. 2C:43-12(e) factors.

The PTI denial noted the crime was not victimless, given the serious injuries inflicted by defendant. The State noted "[d]efendant engaged in an unprovoked, deliberate and intentional attack upon the victim on a public street." The State also considered that the victim, through the victim advocate, advised that he wished to pursue the charges in an email sent to the prosecutor, which the State had turned over to defendant in discovery. The State cited the need to protect the victim, and the public, from such unprovoked attacks in the future. The State also considered the factors in favor of admitting defendant to PTI, namely, his age, education level and desire to continue his education, employment history, his experience as a corrections officer, and lack of a

criminal record or history of violence. However, the State concluded these factors were outweighed by the factors against admission.

The PTI denial concluded "defendant's crime is of such a nature that the value of supervisory treatment is outweighed by the public need for prosecution. . . . For those same reasons, the State submits the harm done to society by abandoning criminal prosecution outweighs the benefits to society from channeling defendant into diversionary supervisory treatment[.]"

Defendant filed a motion to compel discovery from the prosecutor's office "concerning any contacts, communications and involvement by the victim's advocate/civil attorney" relating to defendant's case. Defendant sought "the dates, times, places of and persons attending any meetings or verbal communications with [the victim advocate] and any emails from [the former assistant prosecutor who had handled the matter] regarding the investigation and . . . prosecution of this matter."

During oral argument of defendant's motion, counsel explained he sought the discovery because "[i]t goes to the bias in the way the prosecutor's office dealt with [the victim advocate,] the access [the victim advocate] had to the [prosecutor's] office, . . . the access he had to the victim and his involvement

actually in the case going up."[1]  Defense counsel also argued the advocate had provided inaccurate information to the State regarding the incident itself, which "differ[ed] from the States' own theory of the case."  Therefore, counsel argued he was "entitled to know what other inaccuracies he's provided to the State[.]"

On August 28, 2018, the motion judge issued a written decision granting defendant's motion.  Citing State v. Barath, 169 N.J. Super. 181 (Law Div. 1979), the judge stated:

> This court does find that the circumstances surrounding this case, including but not limited to: the original charging decision, the victim's refusal to speak with the police, the victim's interference with the investigation, and the email from [the victim advocate] to the prosecutor's office, support at minimum, defendant's instant request for discovery as a matter of fairness.  However, the requested discovery will be reviewed in camera by this court to determine if disclosure is necessary and appropriate.

The State sought interlocutory review of this decision, however, we denied the application because the judge had not had an opportunity to conduct the in camera review.

After the judge reviewed the discovery in camera, she issued a written decision on February 7, 2019, challenged in this appeal.  Again citing Barath,

---

[1]  By "going up" we infer counsel meant the victim advocate's influence on the State's decision to charge defendant.

A-3058-18T4

the judge recited the broad authority of the court to order discovery. The judge also stated:

> It is also well settled that under [Rule] 3:13-3, a criminal defendant is entitled to broad discovery, and due process requires that the State disclose information it possesses which is material to the defense, as well as evidence of a favorable character to the defendant. Brady v. Maryland, 373 U.S. 83 (1963).

The judge recited the statutory factors the State addressed in its PTI determination. The judge also noted the State relied upon fifteen items, including: the victim's recorded statement; medical records and photographs of his injuries; six investigation reports; three recorded statements from defendant's girlfriend; a recorded conversation between the victim and defendant's girlfriend; the girlfriend's grand jury testimony; and a statement from the victim's best friend who was with the victim after the assault.

The judge then stated:

> The current analysis then becomes whether the discovery at issue is material and favorable to defendant, requiring its disclosure. In other words, is there a reasonable probability the discovery shows the State did not consider all relevant factors, based their consideration on irrelevant or inappropriate factors, or clearly erred in their judgment when denying defendant's PTI application. [State v.] Bender, 80 N.J. [84,] 92-94 [(1979).]

A-3058-18T4

After reviewing the discovery, this court finds it material and favorable as it contradicts and undermines the factors relied upon by [the prosecutor] in his rejection decision. The discovery tends to show the State did not consider all relevant factors and based their consideration on irrelevant and inappropriate factors.

The issue currently before this court relates only to the discovery. Accordingly, this court holds defendant is entitled to the discovery in order to purse his appeal of the State's veto of his admission into PTI.

This appeal followed.

On appeal, the State argues as follows:

POINT I – DEFENDANT IS NOT ENTITLED TO DISCOVERY OF ANY RECORDS RELATING TO PTI.

I.

Although the issue before us is whether defendant is entitled to discovery regarding the decision of whether to prosecute or admit him into PTI, certain principles unique to PTI nonetheless frame the limited decisions a trial court may make at the PTI stage. The decision to admit a defendant to PTI is a "quintessentially prosecutorial function." State v. Roseman, 221 N.J. 611, 624 (2015) (quoting State v. Wallace, 146 N.J. 576, 582 (1996)). Thus, the scope of judicial review of a prosecutor's determination is severely limited. State v. Nwobu, 139 N.J. 236, 246 (1995); State v. Hermann, 80 N.J. 122, 127-28 (1979).

Prosecutors have wide latitude in deciding whom to divert into the PTI program and whom to prosecute. Nwobu, 139 N.J. at 246. "Reviewing courts must accord the prosecutor 'extreme deference.'" State v. Waters, 439 N.J. Super. 215, 225 (App. Div. 2015) (quoting Nwobu, 139 N.J. at 246). "We must apply the same standard as the trial court. Therefore, we review the [trial court's ruling] of the prosecutor's decision de novo." Id. at 226. Likewise, we review any legal conclusions de novo. State v. Nash, 212 N.J. 518, 540-41 (2013).

"[A] defendant may obtain a hearing to review the prosecutor's decision only after he or she has demonstrated in a motion that the prosecutor abused his or her discretion." State v. Benjamin, 228 N.J. 358, 374 (2017). An abuse of discretion is "manifest if defendant can show that a prosecutorial veto (a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment." Wallace, 146 N.J. at 583 (quoting Bender, 80 N.J. at 93). "[I]t must further be shown that the prosecutorial error complained of will clearly subvert the goals underlying [PTI]." Bender, 80 N.J. at 93. Absent evidence to the contrary, a reviewing court must "presume the prosecutor considered all relevant factors before rendering a decision." State v. Dalglish, 86 N.J. 503, 509 (1981) (emphasis added) (citing Bender, 80 N.J. at 94).

II.

Our de novo review of the record does not support the trial judge's decision to grant defendant discovery. The State provided a detailed explanation, which considered all of the guidelines and statutory factors for admission to PTI. The State also considered evidence supporting defendant's admission to PTI. Although the victim advocate's communication with the State was forceful and at times adversarial, we are not convinced the communication did anything other than underscore the victim's desire for the State to pursue the charges. Indeed, considering the substantial evidence related to the assault, namely, the multiple investigation reports, witness statements, and medical evidence, the State's decision to deny defendant PTI was not an abuse of discretion.

More importantly, the record demonstrates the prosecutor made the decision to re-visit the investigation two weeks after the incident occurred and months before any communication from the victim advocate. Further, the bulk of the communications from the victim advocate concerned whether the prosecutor would file charges against defendant and did not concern PTI. Therefore, the record provides no support for defendant's claims that the decision to prosecute or deny PTI was biased by the victim advocate.

Furthermore, the motion judge's reliance on Barath is inapposite. Barath involved a defendant who sought documents, including investigation reports at the time of his arrest and medical records the prosecutor had relied upon to make the PTI determination, which defendant had never seen. Barath, 169 N.J. Super. at 183-87. The court in Barath cited State v. White, 145 N.J. Super. 257 (Law Div. 1976) and State v. Masucci, 156 N.J. Super. 272 (Law Div. 1978). The Barath court distinguished White by noting the defense in that case was denied discovery where it sought information relating to the mental process of the PTI director in evaluating the information provided by the defendant seeking admission into PTI. Barath, 169 N.J. Super. at 185-86. The Barath court also distinguished Masucci by noting the defense there was denied discovery regarding the scope and sufficiency of the underlying criminal investigation from the PTI director. Ibid.

The defense discovery request was granted in Barath because it was limited to the police reports and the defendant's medical/psychiatric records, which the PTI director had relied upon to make the PTI determination. Barath, 169 N.J. Super. at 187-89. Here, defendant's request went beyond the actual records relied upon by the prosecutor and ventured into the mental decision making process, which is beyond the scope of permissible discovery. Defendant

had all of the materials and an explanation for the prosecutor's PTI determination, which was grounded in the materials in defendant's possession.

Finally, the judge's reliance on Brady as the basis for ordering discovery regarding a PTI determination was wrong as a matter of law. In Brady, the United States Supreme Court held the State violated due process when it suppressed and refused to produce in discovery evidence favorable to the defense on the issue of a defendant's guilt or innocence. 373 U.S. at 87. The Brady standard is inapplicable to a prosecutor's PTI decision, which is unrelated to the parties' separate discovery obligation during the prosecution of a criminal matter.

Reversed. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3058-18T4